# In the United States Court of Federal Claims

No. 22-256 C
Filed Under Seal: July 28, 2022
Reissued: August 16, 2022[*]

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  **    *
                                               *
G4S SECURE INTEGRATION LLC,                    *
et al.,                                        *
                                               *
                Plaintiffs,                    *
                                               *
        v.                                     *
                                               *
THE UNITED STATES,                             *
                                               *
                Defendant.                     *
                                               *
   *  *  *  *  *  *  *  *  *  *  *  *  *  *  **    *
```

*Richard P. Rector*, with whom were *C. Bradford Jorgensen*, *Thomas E. Daley*, *Ryan P. Carpenter*, and *Christie M. Alvarez*, DLA Piper LLP, all of Washington, D.C., for Plaintiffs.

*Brendan D. Jordan*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Corinne A. Niosi*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, all of Washington, D.C., for Defendant, and *John W. Cox*, Attorney Advisor, Office of the Legal Adviser, U.S. Department of State, of Washington, D.C., of counsel.

## OPINION AND ORDER

**SOMERS**, Judge.

This bid protest involves a Department of State ("State" or "DoS") solicitation for a contract to provide local guard services at the U.S. Embassy in Bratislava, Slovakia. Relevant to this protest—because of the effect it had on State's interpretation of the requirements or terms and conditions of the instant solicitation—is the opinion issued by Judge Hertling in another embassy guard services contract bid protest involving two of the three plaintiffs in this protest: *G4S Secure Integration LLC, et al. v. United States*, No. 21-1817C, 2022 WL 211023 (Fed. Cl. Jan. 24, 2022). In that opinion, Judge Hertling held that Federal Acquisition Regulation 52.204-

---

[*] Pursuant to the protective order entered in this case, this opinion was filed initially under seal. The parties provided proposed redactions of confidential or proprietary information. In addition, the Court made minor typographical and stylistic corrections.

7 "requires, among other things, the offering entity to have entered all mandatory identifying information in [the System for Award Management] and the profile to be marked as 'active' at the time an offeror submits its offer." *G4S Secure Integration, LLC*, 2022 WL 211023, at \*6. He further held that: 1) a joint venture formed by two of the plaintiffs in this protest was the "offeror" in the solicitation at issue in the protest before him; and 2) that the joint venture was not registered in the System for Award Management ("SAM") at the time of proposal submission.  Accordingly, Judge Hertling determined that the joint venture was ineligible for award and thus was not prejudiced by State's decision to award the contract at issue in that protest to another entity.  *Id.*  By State's own admission, based on Judge Hertling's decision, it thereafter reexamined Plaintiffs' eligibility to compete in the instant procurement and determined that Plaintiffs were ineligible to remain in the competitive range.  State reasoned that "in light of a recent U.S. Court of Federal Claims decision, neither G4S nor ███████ were properly registered as Joint Ventures in the Government's SAM.gov system at the time of proposal submission.  Therefore, as required by FAR 52.204-7 and Section L of the solicitation, both ███████ and G4S cannot be considered for award and are determined to be ineligible to continue in the competitive range."  AR 3252.

This protest challenges that ineligibility determination by State.  Plaintiffs assert that the ineligibility determination constituted a change to the solicitation's requirements or terms and conditions with regard to SAM registration, and, therefore, State was compelled to amend the solicitation, *see* 48 C.F.R. § 15.206, or conduct discussions, *see* 48 C.F.R. § 15.306.  In addition, Plaintiffs contend that this ineligibility determination was unreasonable because it failed to consider an important aspect of the problem.  For the reasons that follow, the Court sustains Plaintiffs' protest and enjoins the government from proceeding with the competition for, or awarding a contract under, the solicitation at issue in this protest in a manner that is inconsistent with this opinion and order.

## BACKGROUND

The solicitation at issue in this case is for a contract to "provide local guard services at the U.S. Embassy Bratislava."  AR 321.  The services to be provided include to "protect life; prevent unauthorized access; maintain order; deter criminal attacks against employees, dependents, and property[;] prevent terrorist acts against all U.S. assets; and damage to Government property."  AR 322.  The solicitation was issued on August 27, 2021, and was amended twice.  AR 1, 212, 313.  Proposals were due on October 4, 2021, and five proposals were submitted before the deadline.  AR 389, 2664.

The solicitation required contractors to provide a technical proposal, price proposal, an executive summary, a joint venture agreement (if appropriate), company financial statements, a management plan, and past performance information, among other materials.  *See* AR 430–31.  Importantly, Section L of the solicitation provided that "[a]ll offerors (including Joint Venture Partners) must have a Data Universal Numbering System (DUNS) number, be registered in the System for Award Management (www.sam.gov), and have completed online representations and certifications in order to be eligible for award."  AR 389.  In addition, Section L required, "[o]ffer[ors], including any offeror organized as a joint venture, [to] have an active SAM registration at the time of proposal submission and throughout the procurement process.  Any

offeror whose registration is not active in SAM at the time of proposal submission will be excluded from the process and their proposals will not be evaluated." AR 391. Section L also stated that "[i]f the JV has not formally registered under a single DUNS [in SAM.gov], all JV partners must be registered and provide proof of registration or submission of registration." AR 394. Finally, the solicitation incorporated FAR 52.204-7 by reference: "[a]n Offeror is required to be registered in SAM when submitting an offer or quotation, and shall continue to be registered until time of award . . . ." 48 C.F.R. § 52.204-7(b)(1).

In response to the SAM registration requirements, Plaintiffs submitted DUNS numbers for each of the three individual joint venture members but did not submit a DUNS number for the combined, unincorporated joint venture. AR 1195. According to Plaintiffs, they have been awarded embassy guard services contracts in the past based on proposals submitted with DUNS numbers and SAM registrations completed in the same manner as they did for the instant solicitation at issue. ECF No. 28-1 at 10 ("Pls.' MJAR"). In fact, Plaintiffs represented, and the government did not contest, that since 2015, "approximately ███ contracts to unincorporated G4S joint ventures" have been awarded "pursuant to solicitation terms substantially the same as those provided" in the instant solicitation. *Id.*; *see also id.* at 20.

After multiple phases of evaluation, State's Technical Evaluation Panel ("TEP") determined, in a memorandum dated December 31, 2021, that only Plaintiffs and ████ submitted "technically acceptable" proposals. AR 3224. The TEP recommended "awarding to the lower priced proposal" between the two acceptable offerors. *Id.* In a separate document, dated January 11, 2022, State determined Plaintiffs were the lowest priced technically acceptable offeror, thereby making them the presumptive awardee. AR 3239. After Judge Hertling's decision, however, State eliminated Plaintiffs and ████[1] from further consideration, reasoning in its Final Competitive Range Determination that

in light of a recent U.S. Court of Federal Claims decision, neither G4S nor ████ were properly registered as Joint Ventures in the Government's SAM.gov system at the time of proposal submission. Therefore, as required by FAR 52.204-7 and Section L of the solicitation, both ████ and G4S cannot be considered for award and are determined to be ineligible to continue in the competitive range.

AR 3252. Moreover, State also found that

[b]oth ███ and ████ were properly registered within SAM at time of proposal submission with ████ presenting an Active SAM account for it's [sic] JV and ██ presenting an Active SAM account as the lone offeror in it's [sic] proposal with no JV partner noted. Therefore, while neither is deemed technically "Acceptable" at this time, it is determined that we can enter into a final round of discussions so each vendor can present a chance to fix their deficiencies.

*Id.*

---

[1] Another unincorporated joint venture without an independent registration in SAM.

Accordingly, on February 15, 2022, State informed Plaintiffs that "G4S was not properly registered as a Joint Venture in the Government's SAM.gov system at the time of proposal submission. . . .  Therefore, G4S cannot be considered any further within the competitive range and is removed from consideration."  AR 3255.  Thereafter, on March 7, 2022, Plaintiffs filed the instant protest to challenge that determination.

## DISCUSSION

### A.  Jurisdiction and Standing

The Tucker Act, as amended by the Administrative Dispute Resolution Act, provides the Court of Federal Claims with

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).  In order to come within this jurisdictional grant, a protestor must demonstrate that it has standing.  *Castle v. United States*, 301 F.3d 1328, 1337 (Fed. Cir. 2002) ("Standing is a threshold jurisdictional issue, which . . . may be decided without addressing the merits of a determination."); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing].").  To establish standing, a protestor must prove that it is an "interested party."  28 U.S.C. § 1491(b); *see also Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012) ("Only an 'interested party' has standing to challenge a contract award.") (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006)).  An interested party, in turn, is an "actual or prospective bidder[] or offeror[] whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  *Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001).  Accordingly, a plaintiff must prove two elements to establish that it has standing: 1) that it is an actual or prospective bidder/offeror, and 2) that it possesses a direct economic interest in the award of the contract.  *CGI Fed. Inc. v. United States*, 779 F.3d 1346, 1348 (Fed. Cir. 2015).

The government has not challenged Plaintiffs' standing to bring the instant protest; nonetheless, the Court has an independent duty to ensure that it has jurisdiction over the matter.  *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.") (citing cases).  A review of the allegations in the complaint reveals that Plaintiffs have alleged sufficient facts to demonstrate that they have standing to bring this protest.  First, Plaintiffs were indisputably actual offerors.  *See* AR 2663.  Moreover, although Plaintiffs were determined by the agency to be ineligible for award and removed from the competitive range, AR 3252, it is precisely that determination that Plaintiffs challenge in this protest.  And, were Plaintiffs successful in their challenge, they clearly have a direct economic interest, as the record indicates, *inter alia*, that prior to being excluded from competition, Plaintiffs were poised to be awarded a contract pursuant to the solicitation at issue.  *See, e.g.*, AR 3270 ("Based on this assessment, G4S

was selected for contract award."); *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362 (Fed. Cir. 2009) (to demonstrate prejudice in pre-award protests, it is a plaintiff's burden to demonstrate that it has suffered "a non-trivial competitive injury which can be addressed by judicial relief"). Therefore, Plaintiffs have standing to bring this action.

## B. Legal Standard

In bid protests, the Court is charged with reviewing an "agency's decision pursuant to the standards set forth in section 706 of title 5." 28 U.S.C. § 1491(b)(4). Accordingly, the Court examines whether an agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Under such review, "[a] bid award may be set aside if (1) the procurement official's decision lacked a rational basis or (2) the procurement procedure involved a violation of regulation or procedure." *DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1308 (Fed. Cir. 2021) (internal quotations omitted).

On the first ground, "the courts have recognized that contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations and internal quotations omitted). Thus, the Court must "determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, . . . and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Id.* at 1332–33 (citations and internal quotations omitted). On the second ground, "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Id.* at 1333 (citation and internal quotation omitted).

Bid protests are generally decided on cross-motions for judgment on the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), which requires the Court to "make factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). "Unlike a motion for summary judgment, a genuine dispute of material fact does not preclude a judgment on the administrative record." *Id.* at 1355–56. Therefore, in reviewing cross-motions for judgment on the administrative record, "the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *Jordan Pond Co., LLC v. United States*, 115 Fed. Cl. 623, 630 (2014).

## C. Analysis

In some respects, Plaintiffs' claims in this protest are relatively simple and straightforward: State changed the solicitation's SAM registration requirements and its interpretation of those requirements but, in so doing, failed to: consider an important aspect of the problem the changes created; amend the solicitation pursuant to FAR 15.206; or conduct discussions pursuant to FAR 15.306. In other respects, this case is more complex, because lurking in the shadows of this protest is the decision issued by Judge Hertling on January 24, 2022, which is currently on appeal to the Federal Circuit, concerning a different embassy guard services procurement in which he determined that, under FAR 52.204-7, an unincorporated joint

venture is an "offeror" and, therefore, needs to itself be registered in SAM at the time of proposal submission. *See G4S Secure Integration, LLC*, 2022 WL 211023, at *7.

Notably, Plaintiffs do not directly challenge Judge Hertling's determination. Certainly, they could have—the decision of one judge of this Court does not bind another, and the previous decision is applicable only to the procurement at issue in that protest. Plaintiffs' claims in this protest, however, sidestep the question of whether FAR 52.204-7 requires an unincorporated joint venture to be registered in SAM at the time of proposal submission. Although Plaintiffs take some indirect shots at Judge Hertling's decision, when boiled down to its simplest form, the crux of Plaintiffs' argument is that even if the January 24th decision is correct, State was still obligated to amend the solicitation when it chose[2] at the eleventh hour to follow that decision instead of the express SAM registration requirements contained in the solicitation and State's own longstanding interpretation of those requirements. *See* Pls.' MJAR at 22–25. In other words, Plaintiffs ask this Court to find that: 1) the solicitation's SAM registration requirements permitted an unincorporated joint venture to submit a proposal without being registered as a separate entity in SAM, as long as the constituent members of the joint venture were appropriately registered; and 2) regardless of whether FAR 52.204-7 permits the same, that when State adopted Judge Hertling's interpretation of FAR 52.204-7 as its own, it was required to amend the solicitation. *See id.*

The government disagrees with Plaintiffs' assertions. First, the government—rather curiously, given the record before the Court—argues that State did not change its position on how the SAM registration requirements applied to unincorporated joint ventures. *See* ECF No. 33 at 13 ("Gov.'s MJAR"). Second, the government asserts that, in eliminating Plaintiffs from the competitive range, State was merely following the unambiguous terms of the solicitation, which allegedly required unincorporated joint ventures to be registered in SAM prior to proposal submission. *Id.* at 13–14. Finally, the government contends that, to the extent State's reading of the solicitation's SAM registration requirements is not the only reasonable reading of those provisions, the resulting ambiguity is a patent one that Plaintiffs were required to raise with State prior to proposal submission. *See* ECF No. 40 at 7–9 ("Gov.'s Reply").

Accordingly, the Court must analyze whether State changed its interpretation of the SAM registration requirements after Judge Hertling's January 24th decision; whether the solicitation required an unincorporated joint venture to register in SAM prior to proposal submission; whether Plaintiffs have waived their claims in this protest under *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. 2007); and, if there was no *Blue & Gold* waiver, whether State was required to amend the solicitation or conduct discussions prior to eliminating Plaintiffs from the competitive range. Alternatively, the Court must determine, regardless of how it decides the above-outlined issues, whether when State chose to eliminate Plaintiffs from the competitive range it fully considered important aspects of the problem and, therefore, made a

---

[2] To be clear, State's reinterpretation of the SAM registration requirements was a choice in the sense that there was no binding court decision that mandated State's reinterpretation. Judge Hertling's January 24th decision did not impose injunctive relief, and, even if it had, it almost certainly would not have applied beyond the procurement at issue in that protest. Rather, State chose to change its interpretation of the SAM registration requirements based on, by its own admission, one trial court decision.

decision that was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

As explained in more detail below, the Court disagrees with all of the government's assertions as to why it was not required to amend the solicitation when, in light of Judge Hertling's decision, it eliminated Plaintiffs from the competitive range. First, it is beyond peradventure that State changed its interpretation of the SAM registration requirements when it removed Plaintiffs from the competitive range. Second, the plain language of the solicitation clearly permitted an unincorporated joint venture to meet the SAM registration requirements through the registration of each of the joint venture partners in SAM; thus, State was not applying the solicitation as written. Third, the *Blue & Gold* waiver rule is inapplicable here for several reasons, most importantly that the issue that the government claims Plaintiffs were required to challenge prior to proposal submission did not arise until sometime after January 24, 2022, and Plaintiffs were not made aware of the issue until February 15, 2022. *See* AR 3255. Accordingly, the Court concludes that when State changed its interpretation of the application of FAR 52.204-7 to the instant solicitation on February 8, 2022, it was required to amend the solicitation pursuant to FAR 15.206 rather than taking the more expedient route of simply eliminating Plaintiffs from the competitive range based on this revised interpretation.

Before turning to its analysis of the government's errors, the Court must address briefly what it is not deciding: whether Judge Hertling's January 24th opinion correctly interpreted FAR 52.204-7 as it applies to unincorporated joint ventures. Although two of the three plaintiffs in this protest are currently challenging that decision at the Federal Circuit, the decision in this protest does not turn on the meaning of FAR 52.204-7. Rather, the question in this protest is whether State may issue a solicitation that allowed Plaintiffs to compete for the procurement, interpret the solicitation in a manner that allowed Plaintiffs to compete up to the eve of award, and then, at the eleventh hour, eliminate Plaintiffs from competition based on a newly adopted interpretation of a FAR provision (and, in turn, the solicitation itself), all without amending the solicitation pursuant to FAR 15.206 or conducting discussions pursuant to FAR 15.306. In other words, the Court must decide whether, assuming *arguendo* that State's new interpretation of FAR 52.204-7 is correct, State was required to amend its solicitation to conform with its new interpretation of the FAR. As discussed below, because the solicitation was clearly written to reflect State's pre-February 8th interpretation of the FAR 52.204-7, when that interpretation changed, State was required to amend the solicitation and notify offerors of the change. In addition, State was required to consider important aspects of the problem that its new interpretation created.

## 1. Prior to Judge Hertling's January 24th Decision, State Clearly Interpreted Both the Solicitation and the FAR to Allow Plaintiffs to be Eligible for Award

In response to Plaintiffs' assertion that State changed its interpretation of the SAM requirements, the government asserts that, rather than changing its interpretation, State "simply applied the representations as stated in the Solicitation in a belated fashion, it did not switch or go back on a previous interpretation . . . ." Gov.'s Reply at 20. The Court finds the government's position unsupported by the facts. The Court will not willingly suspend its disbelief and pretend, as the government attempts to, that State "did not switch or go back on a

previous interpretation."  Clearly, based on the administrative record and by State's own admission, prior to Judge Hertling's January 24th decision, State concurred with Plaintiffs' interpretation of the SAM registration requirements and applied those requirements to all but award the embassy guard services contract to Plaintiffs.

The record definitively supports a factual conclusion that, until the issuance of Judge Hertling's January 24th decision, State viewed Plaintiffs as in full compliance with the SAM registration requirements.  First, according to State's Final TEP Report of December 2021, Plaintiffs' final proposal revisions were found "Technically Acceptable" and, therefore, were "Include[d] in Range."  AR 3224.  The same report makes clear that "panel members were briefed by [the Office of Acquisition ('AQM')] on the following: . . . 2) *the evaluation factors for award contained in Sections L* and M of the solicitation; 3) individual technical evaluation forms; . . . and 5) the requirement for the TEP to come to a consensus for each offeror."  *Id.* (emphasis added).  As the SAM registration requirements were located within Section L of the solicitation, the Court can safely presume that members of the TEP were aware of such "evaluation factors for award," AR 3224, prior to conducting their final analyses.  *See Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1382 (Fed Cir. 2018) ("'In the absence of clear evidence to the contrary,' the presumption of regularity allows courts to presume that 'public officers have properly discharged their official duties.'") (quoting *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001)).  In short, the Final TEP Report raises no concern whatsoever with Plaintiffs' compliance with the requirements regarding SAM registration.

Moreover, State's Final Price Analysis Report of January 11, 2022, raises not even a specter of concern with Plaintiffs' proposals being compliant with the SAM registration requirements.  *See generally* AR Tab 28.  First, the report states that Plaintiffs' "SF33 documentation is complete."  AR 3228.  The Standard Form 33, the first page of the solicitation, requires offerors to include their name, address, and DUNS number.  *See* AR 1.  Second, as to "Proposal Requirement" Section L.2 of the solicitation, titled "Contract Award," the report reflects that Plaintiffs are "proposing a Joint Venture" and that each member is "Registered in SAM."  AR 3228.  Third, as to "Proposal Requirement" subsection L.11.1.5, titled "Business Management," the report reflects that Plaintiffs provided a "Signed JV agreement" and that "*SAM documentation [was] provided*."  AR 3229 (emphasis added).  Recall, subsection L.11.1.5 states that "[i]f the JV has not formally registered under a single DUNS, *all JV partners must be registered and provide proof of registration or submission of registration*."  AR 394 (emphasis added).  The report simply does not suggest that Plaintiffs were falling short of *any* SAM registration requirements.  Rather, it concludes "the Government believes all four (4) evaluated vendors provided clear responses to pricing, including all required information from the solicitation."  AR 3238.  Plaintiffs, thus, correctly observe that "Section L.11.1.[5] plainly contemplated that an unincorporated joint venture would be eligible for award even if it was not registered in SAM, provided that all of the joint venture members were registered in SAM."  Pls.' MJAR at 20.  Time and again, State's actions confirm this.  Furthermore, FAR 4.1103 provides that the contracting officer "[s]hall verify that the offeror or quoter is registered in SAM . . . at the time an offer or quotation is submitted."  48 C.F.R. § 4.1103(a)(1).  Absent clear evidence to the contrary, the Court must presume this verification was done.  *See Cleveland Assets*, 883 F.3d at 1382.

Most tellingly, the agency's Award Determination Memorandum of January 13, 2022, provides:

> In accordance with Section M.3, which states, "Award will be made to a responsive responsible offeror on the basis of the lowest evaluated price of proposals *meeting or exceeding the technical requirements*", G4S was deemed technically acceptable and their pricing was determined to be fair and reasonable in respect to the IGCE and market value for such services within Bratislava, Slovakia. *Based on this assessment, G4S was selected for contract award*.

AR 3270 (emphasis added).  To repeat, State selected Plaintiffs for award.

In addition, the Final Competitive Range Determination of February 8, 2022, states that "[o]nly four (4) [proposals] . . . *provided all information in accordance with the instructions stated in the solicitation*."  AR 3242 (emphasis added).  It continues, "[a]ll four (4) proposals were reviewed to ensure that the offerors *complied with the instructions and passed initial review in accordance with Section L of the solicitation*."  *Id.* (emphasis added).  Plaintiffs were listed first among the four "accepted offeror names."  *Id.*; *see also* AR 3243 ("All four (4) remaining vendors (G4S, ███████, ███, and ██████) *provided proposals in accordance with the requirements set forth in section L* of the solicitation. No sections or documents were missing." (emphasis added)).

Nevertheless, the "Competitive Range" conclusion of the same document makes a sudden about-face, providing that

> [t]he TEP identified an award to be made to G4S or ████ as both were deemed technically "Acceptable". However, in light of a recent U.S. Court of Federal Claims decision, *neither G4S nor* ████ *were properly registered as Joint Ventures in the Government's SAM.gov system* at the time of proposal submission. Therefore, *as required by* FAR 52.204-7 and *Section L of the solicitation*, both ██████ and G4S cannot be considered for award and are determined to be ineligible to continue in the competitive range.

AR 3252 (emphasis added).  State reached this conclusion despite determining up until this point that Plaintiffs satisfied the SAM registration requirements.

To summarize, State's own Competitive Range Determination states that Plaintiffs "provided [a] proposal[] *in accordance with the requirements set forth in section L* of the solicitation," AR 3243 (emphasis added); FAR 4.1103 required the agency to verify SAM registration compliance at the time Plaintiffs' proposal was submitted; and Plaintiffs had been recommended for award.  Yet, State, in an about-face, concluded Plaintiffs "cannot be considered for award."  AR 3252.  This conclusion was clearly a change in State's interpretation of the SAM registration requirements.

2.  **The Solicitation's Section L SAM Registration Requirements Unambiguously Permitted an Unincorporated Joint Venture to Rely on the SAM Registrations of Each of its Joint Venture Partners**

With regard to the SAM registration requirements contained in Section L of the solicitation, Plaintiffs argue: the terms of the solicitation provide that an unincorporated joint venture, like the one formed by Plaintiffs, did not need to be registered in SAM; rather, for an unincorporated joint venture, only the joint venture partners needed to be registered.  In response and to the contrary, the government asserts that "[t]he unambiguous language of FAR 52.204-7 and other provisions of the solicitation make clear that offerors organized as a Joint Venture must register in SAM.gov as a Joint Venture and do so before submitting their proposal [and that] G4S did neither."  Gov.'s MJAR at 2.  In other words, according to the government, "[t]he plain language of these clauses make clear that: a) a Joint Venture must be registered on SAM.gov; b) registration must be as of the proposal submission date; and c) failure to abide by either a or b may result in the 'exclu[sion]' of the proposal or the 'proposal being deemed not considered for award.'"  *Id*. at 10 (citing AR 79, 167).  Therefore, the government concludes, State's elimination of Plaintiffs from the competitive range was a decision that was consistent with the terms of the solicitation.  The Court, however, does not concur.  Section L of the solicitation unambiguously permitted an unincorporated joint venture to rely on the SAM registrations of each of its members.

Both Plaintiffs and the government assert that the unambiguous language of the solicitation supports their respective interpretations of the solicitation's SAM registration requirements.  The terms of a solicitation are unambiguous if its language is only susceptible to one reasonable interpretation.  *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004) ("The solicitation is ambiguous only if its language is susceptible to more than one reasonable interpretation.").  In interpreting Section L's provisions related to SAM registration, the Court must begin with the plain language of the document and give the words their plain and ordinary meaning.  *See, e.g.*, *Coast Fed. Bank, FSB v. United States,* 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc); *see also Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990 (Fed. Cir. 1996) ("The principles governing interpretation of Government contracts apply with equal force to the interpretation of solicitations issued by the Government for such contracts.").  Stated differently, "[i]f the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning," *id*., "unless it is apparent that some other meaning was intended and mutually understood," *Ace Constructors, Inc. v. United States*, 499 F.3d 1357, 1361 (Fed. Cir. 2007).

Moreover, in determining the meaning of the solicitation's SAM registration requirements, the Court must "interpret the [solicitation] in a manner that gives meaning to all of its provisions and makes sense." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (citing *Hughes Commc'ns Galaxy, Inc. v. United States*, 998 F.2d 953, 958 (Fed. Cir. 1993)).  "An interpretation which gives a reasonable meaning to all provisions of a solicitation will be preferred to one which leaves a portion of it useless or inexplicable." *Fulcra Worldwide, LLC v. United States*, 97 Fed. Cl. 523, 538 (2011) (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  In other words, the Court's interpretive goal is to give effect to and harmonize all the provisions of the solicitation, as opposed to interpreting the solicitation in

a manner that renders portions of it meaningless. *Arizona v. United States*, 216 Ct. Cl. 221, 235–36 (1978) ("[A]n interpretation which gives a reasonable meaning to all parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.").  Furthermore, "the language of a contract must be given that meaning that would be derived from the contract by a reasonable[,] intelligent person acquainted with the contemporaneous circumstances," *Hol-Gar Mfg. Corp. v. United States*, 169 Ct. Cl. 384, 388 (1965) (citing cases), such that the Court should "place itself into the shoes of a reasonable and prudent contractor and decide how such a contractor would act in interpreting the contract documents," *H.B. Mac, Inc. v. United States*, 153 F.3d 1338, 1345 (Fed. Cir. 1998).

Plaintiffs argue that the Court should accept their reading of the solicitation "because the Solicitation does not unambiguously require unincorporated joint ventures to be registered in SAM.gov." Pls.' MJAR at 19.  In making this assertion, Plaintiffs point to several provisions of Section L of the solicitation that indicate that in the case of an unincorporated joint venture it is the joint venture partners that must be registered in SAM, including, most importantly, the clause that provides that "[i]f the JV has not formally registered under a single DUNS, all JV partners must be registered and provide proof of registration or submission of registration." AR 394.  In addition, Plaintiffs direct the Court to "several Solicitation provisions [that] treat a joint venture's individual members as the 'Offeror,' namely past performance requirements and in-country licensing requirements." Pls.' MJAR at 20 (citing AR 367, 396, 399, and 405).  Furthermore, Plaintiffs argue that the State Department's conduct in this procurement and ███████ previous embassy guard services procurements confirms their interpretation, because in those previous procurements and the instant procurement (until Judge Hertling issued his January 24th decision) State did not reject proposals from G4S unincorporated joint ventures for failure to register formally in SAM. *Id.* at 20–21.

The government counters that "[t]he plain text of the Solicitation makes clear that '[a]ll offerors (including Joint Venture Partners) must have a Data Universal Numbering System (DUNS) number, be registered in the System for Award Management (www.sam.gov) . . . to be eligible for award.'" Gov.'s MJAR at 9 (citing AR 77).  The government goes on to argue that Plaintiffs' reliance on AR 394 ("[i]f the JV has not formally registered under a single DUNS, all JV partners must be registered and provide proof of registration or submission of registration.") is misplaced because

> [t]his clause does not say a Joint Venture itself need not register on SAM.gov, only that in the circumstance where there is no singular DUNS for the Joint Venture, the constituents of the Joint Venture must meet the additional requirements of registering and providing proof of registration for the members of the Joint Venture.

*Id.* at 10.  Additionally, the government contends that Plaintiffs' assertion that the term "offeror" refers to the constituent members of the unincorporated joint venture, rather than the joint venture itself, is "contrary to the plain meaning" of the term. *Id.* at 11.  Rather, according to the government, the plain meaning of "offeror" inherently refers to a singular entity, as evidenced by the term's use throughout the solicitation. *Id.* (citing AR 79 and *Banknote Corp. of Am.*, 365 F.3d at 1353).

Although the administrative record and solicitation in this case are lengthy, this protest largely boils down to a handful of requirements found in Section L:

- All offerors (including Joint Venture Partners) must have a Data Universal Numbering System (DUNS) number, be registered in the System for Award Management (www.sam.gov), and have completed online representations and certifications in order to be eligible for award.  AR 389.

- Offer[or]s, including any offeror organized as a joint venture, must have an active SAM registration at the time of proposal submission and throughout the procurement process.  Any offeror whose registration is not active in SAM at the time of proposal submisssion [sic] will be excluded from the process and their proposals will not be evaluated. AR 391.

- All Joint Venture partners shall sign the proposal using the Joint Venture signature format provided.  Failure to provide a signed Joint Ventures signature page may result in the proposal being deemed not considered for award. . . .  Please note that all JV partners must be registered in SAM.gov.  AR 392.

- System for Award Mangement [sic] (SAM.gov).  In accordance with FAR 4.1102 prospective contractotrs [sic] shall be registered in the SAM database prior to award. All offerors shall provide a copy of the SAM.Gov registration. If the JV has not formally registered under a single DUNS, all JV partners must be registered and provide proof of registration or submission of registration. In order to ensure payment for services and compliance with SAM.gov, the Contractor shall provide banking information for entities not currently listed with the Office of Foreign Assets Control (https://sanctionssearch.ofac.treas.gov/)[.]  AR 394.

The Court's task then is to determine whether these Section L requirements had a clear and unambiguous meaning.  The Court begins this task with the solicitation's requirement that "All offerors (including Joint Venture Partners) must have a Data Universal Numbering System (DUNS) number, be registered in the System for Award Management (www.sam.gov), and have completed online representations and certifications in order to be eligible for award."  AR 389. Overall, this provision is relatively uncomplicated: all offerors must have a DUNS number and be registered in SAM to be eligible for award.  There is, however, some nuance within this provision that is critical to understanding the solicitation's SAM requirements.  First, the first parenthetical in the provision ("including Joint Venture Partners"), like other similar wording in the solicitation, requires joint venture partners to be registered in SAM.  *See id*.  Second, and more importantly, the parenthetical, when read with the rest of the clause, clearly provides that joint venture partners are "offerors."  Plaintiffs, of course, agree with this interpretation of the clause.  State also seemed to agree with this interpretation—stating in its Competitive Range Determination, for instance, that a proposal submitted by a single company was submitted by a "lone offeror" as opposed to a joint venture, which would have multiple offerors.  *See* AR 3252 (stating that "███ present[ed] an Active SAM account as *the lone offeror* in it's [sic] proposal *with no JV partner noted*") (emphasis added).  The government in its briefing does not offer an

alternative interpretation for this provision, seemingly agreeing that the plain meaning of the provision is that joint venture partners are offerors.  *See, e.g.*, Gov.'s MJAR at 2 (noting that "other provisions of the solicitation make clear that *offerors* organized as a Joint Venture must register in SAM.gov") (emphasis added).

Next, the Court turns to a second statement in the solicitation mandating, like the above provision, that "all JV partners must be registered in SAM.gov."  AR 392.  While this provision does not mention offerors or provide any direct relationship between the terms "joint venture partners" and "offeror," it does show that State required each constituent member of any joint venture to be registered in SAM.

The government relies heavily upon the next relevant provision: "[o]ffer[or]s, including any offeror organized as a joint venture, must have an active SAM registration at the time of proposal submission and throughout the procurement process."  AR 391.  As an initial matter, the Court agrees with the government that there is a typographical error in this provision and that "offers" was intended to be "offerors."  ECF No. 40 at 4 ("Gov.'s Reply") ("First, it is likely that 'offer' as it appears in this provision is a typographical error meant to refer to 'offerors' . . . .").  One arrives at this conclusion easily if the sentence is read wholistically with the phrase "including any offeror organized as a joint venture" as an appositive that "further identif[ies]" the proceeding noun offeror.  *See* THE CHICAGO MANUAL OF STYLE ¶ 5.23 (17th ed. 2017).  It is nonsensical that an offeror can modify an offer: one refers to an entity; the other is a type of communication.  From this the government argues that the Court should read this provision as requiring a joint venture to be registered in SAM apart from its constituent members.  *See* Gov.'s MJAR at 11 ("The plain meaning of this clause is that the 'offeror' refers to a single entity, which in the case of a Joint Venture would be the Joint Venture itself.").  The government asserts its interpretation is bolstered by language from a form that was attached to the solicitation: "[i]f Joint Venture, present a DUNS number above for the Joint Venture.  Then, complete below as applicable for each joint venture partner."  *See* Gov.'s MJAR at 9 (quoting AR 167) (emphasis omitted).[3]  Plaintiff responds that this provision is not as restrictive as the government interprets it and that the term joint venture as used in the provision does not necessarily refer to unincorporated joint ventures.

Although the Court finds the government's interpretation of this provision in isolation reasonable, the Court does not read provisions of a solicitation in a vacuum.  Rather, it must harmonize and effectuate this provision with the other SAM-related provisions.  When it comes to harmonization, Plaintiffs' interpretation, which is also reasonable, may be harmonized with the other SAM-related provisions.  The government's interpretation quite simply cannot.  A reasonable reading of this provision that also allows it to be harmonized with the other SAM-related provisions and gives effect to those provisions is that the reference to "joint ventures" in this provision refers to incorporated joint ventures and does not include unincorporated joint ventures.  This is readily arrived at when one notes the use of the phrase "organized as."  This is

_____

[3] The language the government relies on regarding presenting a DUNS Number for the Joint Venture is not a part of the solicitation itself but, rather, is an asterisked clause on a form that offerors were instructed to complete.  *See* AR 427.  In other words, in arguing for the Court to adopt its interpretation of the *solicitation*, the government points only to what amounts to language in a footnote on a form attached to the solicitation.

the only place in the solicitation in which the phrase "organized as" is used.  Read in conjunction with the rest of the solicitation's SAM-related language, the only reasonable reading that harmonizes and effectuates this language is that the clause "organized as a joint venture" means a joint venture that is formally organized as a separate legal entity as opposed to an unincorporated joint venture, which is not organized as a separate legal entity and is instead a grouping of co-venturers, each of which could be organized as any number of types of entities (*e.g.*, a corporation, an LLC, or a partnership).  In other words, incorporated joint ventures are formal "organized" entities and unincorporated joint ventures—at least in the eyes of the drafters of the solicitation—are not.  There is no other way to read this provision and harmonize it with the other SAM registration requirements in the solicitation (especially the next clause the Court will analyze).

Moving to the last relevant Section L provision, the Court finds that it is impossible to accept the government's interpretation of the above-cited provision and harmonize it with, and give effect to, the final relevant Section L provision: "All offerors shall provide a copy of the SAM.Gov registration.  If the JV has not formally registered under a single DUNS, all JV partners must be registered and provide proof of registration or submission of registration." AR 394.  If the Court were to accept the government's interpretation—that any joint venture, including an unincorporated joint venture, is the offeror and must be registered—how does the government explain the meaning of this provision?  It is impossible to harmonize the fact that the solicitation explicitly provides a path by which *only* constituent members of a joint venture need to be registered in SAM *and* find that the solicitation considered an unincorporated joint venture as an independent entity to be an offeror that must register in SAM.

Despite this impossibility, the government nonetheless attempts to explain this provision of the solicitation, arguing

> the fact that a DUNS number is a prerequisite for SAM registration does not mean that this clause requires only constituent members of a joint venture to register in SAM without the joint venture they are part of also registering.  This clause merely states that when the joint venture has not *formally* registered under a *single* DUNS, then the constituent members of the joint venture must register.  If a joint venture itself had multiple DUNS numbers or if the joint venture had registered in SAM, but its registration was not rendered formal for whatever reason, then the joint venture members must also register in SAM.  Contrary to G4S's characterization, this clause does not say the joint venture need not register.

Gov.'s Reply at 5.  There are several problems with the government's argument.  First, to paraphrase the government: contrary to the government's characterization, this clause absolutely says that a joint venture need not register.  To spell out the plain meaning of the clause a little better so as to not have to repeat the entire paragraph of which it is a part—a paragraph titled "System for Award Management"—the Court will insert "in SAM" at the appropriate places in the provision in the manner that it plainly reads: "If the JV has not formally registered [in SAM] under a single DUNS, all JV partners must be registered [in SAM] and provide proof of registration . . . ."  AR 394.  The government tries to obscure this plain reading by talking

hypothetically about multiple DUNS numbers, but the fact of the matter is that an entity must have *a* DUNS number in order to register in SAM.  As Plaintiffs correctly point out:

> The Government's argument on this point is illogical because a DUNS number <u>was a prerequisite for an entity, itself, to be registered in SAM</u>.  At the time of proposal submission, entities needed a DUNS number to register in SAM.  *See, e.g.*, SAM.gov Update, U.S. GENERAL SERVICES ADMINISTRATION, https://www.gsa.gov/about-us/organization/federal-acquisition-service/office-of-systems-management/integrated-award-environment-iae/iae-systems-information-kit/samgov-update (last visited May 3, 2022) ("All entities wanting to register to do business with the federal government or wanting to get a Unique Entity ID (SAM) only before April 4, 2022, must first obtain a DUNS Number.").  *It would have been impossible for a joint venture to register in SAM without having a DUNS number for the joint venture entity itself*.

ECF No. 36 at 6 ("Pls.' Response & Reply") (emphasis added).  In other words, the provision plainly states that if the joint venture is not registered in SAM, it is still eligible to compete so long as each joint venture partner is registered in SAM.

Moreover, the government's assertion that the provision means that "if the joint venture had registered in SAM, but its registration was not rendered formal for whatever reason, then the joint venture members must also register in SAM" is inconsistent with its own arguments related to FAR 52.204-7.  The government asserts that a joint venture must be "registered in SAM when submitting an offer."  Gov.'s MJAR at 11 (citations omitted).  But if the government is correct, then register means register—there is no acceptable "registration" pursuant to FAR 52.204-7 that is "not rendered formal for whatever reason."  At the very least, the registration must be marked by the government as "Active" to count as being "Registered in the System for Award Management."  FAR 52.204-7(a)(4).  An "Active" registration is not one that is "not rendered formal for whatever reason."  *See* FAR 52.204-7(a) (defining what it means to be registered in SAM).  In other words, the government cannot argue that State's reinterpretation of FAR 52.204-7 applies when it helps the government's argument and then ignore the strictures of that regulation when it does not help its argument.

In sum, the plain meaning of the SAM registration requirements contained in Section L of the solicitation—when read in context of the whole solicitation, in a manner that harmonizes and gives effect to all of the SAM-related provisions and does not render any of the language useless, inexplicable, void, or superfluous, and is consistent with the meaning that was intended by State and would be understood by a reasonable, intelligent person acquainted with the circumstances of embassy local guard services procurements—is that an unincorporated joint venture did not need to register in SAM as long as each of the joint venture partners was registered.  The plain language of Section L also establishes that, at least for purposes of this solicitation, a joint venture partner in an unincorporated joint venture is an offeror.

Ordinarily, the Court would now turn to the task of addressing the meaning of FAR 52.204-7, which was incorporated into the solicitation by reference and would apply even were it not so incorporated; however, in this case, as mentioned above, Plaintiffs have not offered any

substantive argument regarding the meaning of FAR 52.204-7.  Instead, the best way to view Plaintiffs' claim is to assume for the sake of argument that FAR 52.204-7 *does* require unincorporated joint ventures to register but that this requirement is ambiguous, and, regardless of whether it is ambiguous or not, State was required to amend the solicitation or conduct discussions when it adopted its new interpretation of FAR 52.204-7.  Accordingly, rather than interpreting the meaning of FAR 52.204-7, the Court turns to the task of determining whether Plaintiffs had a duty under the *Blue & Gold* waiver rule to raise with State prior to proposal submission a potential conflict between the SAM requirements in Section L of the solicitation and the requirements of FAR 52.204-7.

### 3.   Plaintiffs Have Not Waived Their Challenge Under the *Blue & Gold* Waiver Rule

Even assuming that FAR 52.204-7 requires unincorporated joint ventures to be registered in SAM at the time of proposal submission, Plaintiffs were not required to raise the conflict between Section L of the solicitation and FAR 52.204-7 with State prior to proposal submission in order to avoid waiver for several reasons.  First, the meaning of FAR 52.204-7 is not clear on its face; thus, assuming that there is a conflict between the solicitation and the FAR, any resulting ambiguity is latent.  Second, even if the Court were to assume that FAR 52.204-7 is clear on its face, the patent ambiguity that results between the terms of the solicitation and the FAR would not be subject to the *Blue & Gold* waiver rule because: 1) both Plaintiffs and State shared the view (at least until some point after Judge Hertling's decision) that unincorporated joint ventures did not need to register in SAM, and thus the issue had not arisen by the deadline for proposal submission; and 2) raising the issue with State prior to the January 24th decision would have been futile.

To review, there are two types of ambiguities: patent and latent.  A patent ambiguity is one that is so "obvious, gross, [or] glaring, . . . that [a] contractor ha[s] a duty to inquire about it at the start."  *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1162 (Fed. Cir. 2004) (quoting *H & M Moving, Inc. v. United States*, 204 Ct. Cl. 696, 716 (1974)).  This includes facially inconsistent provisions that would put a reasonable contractor on notice and prompt it to inquire with the agency about the provision, *see Stratos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1381 (Fed. Cir. 2000), or another "obvious omission, inconsistency or discrepancy of significance," *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1312 (Fed. Cir. 2016) (quoting *E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1339 (Fed. Cir. 2004)).  On the other hand, a latent ambiguity is "a hidden or concealed defect which is not apparent on the face of the document, could not be discovered by reasonable and customary care, and is not so patent and glaring as to impose an affirmative duty on plaintiff to seek clarification."  *Id*. at 1312–13 (quoting *Analytical & Rsch. Tech., Inc. v. United States*, 39 Fed. Cl. 34, 46 (1997) (internal quotation marks and citation omitted)).  In cases in which a "solicitation contains a patent ambiguity, the government contractor has a duty to seek clarification from the government, and its failure to do so precludes acceptance of its interpretation in a subsequent action against the government."  *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (internal quotation marks and citation omitted).  Latent ambiguities, by contrast, "will . . . be construed against the government," as they are not apparent on the face of the

solicitation. *NVT Techs.*, 370 F.3d at 1162 (citing *Edward R. Marden Corp. v. United States*, 803 F.2d 701, 705 (Fed. Cir. 1986)).

Plaintiffs argue that any ambiguity between the solicitation and FAR 52.204-7 is latent because

> it only came into existence as a result of Judge Hertling's opinion . . . and [State's] implementation of that opinion without allowing offerors the opportunity to revise proposals. In other words, by not informing offerors that unincorporated joint ventures could no longer satisfy the Solicitation's SAM registration requirements, [State] itself created an ambiguity that was not previously apparent to either party.

Pls.' Response & Reply at 8.  Moreover, they assert that "Judge Hertling's interpretation of the term 'offeror' in FAR 52.204-7 was not apparent from the plain language of that provision; if it were, Judge Hertling would not have needed to resort to a comment in the *Federal Register* to define the term." ECF No. 46 at 10.  Because of this, Plaintiffs argue that the ambiguity should be construed against the government as drafter and was not one they were required to raise prior to proposal submission. *See id.* at 9.

The government counters that if there is an ambiguity, it is patent because FAR 52.204-7 has been "clear and unambiguous" in requiring joint ventures to independently register in SAM since it was rewritten in 2018 and, therefore, any conflict with the solicitation's SAM-related provisions was obvious and glaring. *See* Gov.'s Reply at 7–8.  Additionally, according to the government, even if the Court finds that there is a latent ambiguity, Plaintiffs' interpretation "is not more reasonable than [State's]," and, accordingly, Plaintiffs' interpretation cannot prevail over the government's interpretation, which "harmonizes all the terms regarding SAM registration instead of ignoring the clear import of FAR 52-204-7 and Exhibit P of the Solicitation[.]" *Id.* at 9 (citing AR 167).

The Court believes that the Plaintiffs have the better of the arguments.  The ambiguity that results—if one assumes that State's reinterpretation of FAR 52.204-7 based on Judge Hertling's decision is correct—is a latent one, and the government's interpretation does not, in fact, harmonize all the terms regarding SAM registration.

First, as explained above, the administrative record clearly indicates that: 1) State concluded Plaintiffs satisfied the SAM registration requirements prior to Judge Hertling's decision, *see* AR 3224, 3229, 3238; and 2) State was on the cusp of awarding Plaintiffs the contract, *see* AR 3224, 3239, 3243, 3252.  The Court cannot imagine how there could be such a glaring inconsistency that would give rise to a patent ambiguity when, but for Judge Hertling's decision regarding a similar procurement, Plaintiffs were determined to be registered properly in SAM and award of the contract to Plaintiffs was all but inevitable.  In short, neither State nor Plaintiffs thought unincorporated joint ventures needed to register in SAM until Judge Hertling's January 24th decision.  This is precisely what a latent ambiguity is: latent ambiguities are of the sort that are unknowable until there is some "objective circumstance[]" that makes multiple interpretations reasonable. *See Travelers Cas. & Sur. Co. of America v. United States*, 75 Fed. Cl. 696, 711 (2007) (citations and quotations omitted).  A change in policy, namely State's

17

regarding what constitutes an offeror in the case of an unincorporated joint venture, is such an objective circumstance.

The unknowable, and thus latent, nature of this change of circumstances is further emphasized when the Court examines the issue through the lens of a reasonable, intelligent person acquainted with the contemporaneous circumstances. *See Metric Constrs., Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 752 (Fed. Cir. 1999) ("This court adheres to the principle that 'the language of a contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances.'") (quoting *Hol-Gar Mfg. Corp.*, 169 Ct. Cl. at 388).  Not only did State determine that Plaintiffs (along with ███████, another unincorporated joint venture without an independent registration in SAM) complied with Section L, *see* AR 3242, and all but award Plaintiffs the contract, but State has awarded other embassy guard services contracts to unregistered joint ventures.  Indeed, this bid protest is the result of State's reinterpretation of the FAR and the provisions of the instant solicitation as a result of a different bid protest involving State awarding an embassy security contract to an unregistered joint venture.

In other words, State has concluded in the past and for this solicitation (until Judge Hertling's January 24th decision) that unregistered joint ventures satisfied FAR 52.204-7.  This causes the Court to wonder, as the Court of Claims once did: "[i]f plaintiff's error was so glaringly obvious or patent that he should have discovered it or made inquiry of the contracting officer, we find it difficult to understand why such a well-qualified representative of the defendant made the same mistake." *Kraus v. United States*, 177 Ct. Cl. 108, 118 (1966).  It is hard to envision that an inconsistency could be so apparent and glaring as to be patent and, yet, that State, Plaintiffs, and another potential awardee would proceed in the manner they did.  A patent ambiguity "contains *facially* inconsistent provisions that would place a *reasonable contractor* on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties." *Stratos Mobile Networks USA, LLC*, 213 F.3d at 1381 (emphasis added).  Simply put, as neither State nor Plaintiffs proceeded as though there was any ambiguity between FAR 52.204-7 and the solicitation's SAM registration requirements until Judge Hertling issued his January 24th decision, it would appear that any ambiguity is latent.

In addition, leaving aside the parties' mutual understanding of the requirements, it does not appear that FAR 52.204-7 is as "clear and unambiguous" as the government argues.  Beside the fact that State had a completely different interpretation of the provision and the solicitation until some point after the January 24th decision, in the decision itself Judge Hertling did not simply look to the text of FAR 52.204-7 to interpret the clause.  Rather, he examined pre-2018 versions of the provision, how the provision fit in with other provisions of the FAR related to SAM registration, and importantly, as it pertains to what constitutes an "offeror," a comment in the *Federal Register* regarding whether joint ventures should be exempt from the revised SAM registration requirement.  *See G4S Secure Integration LLC*, 2022 WL 211023, at *6 ("Thus, in revising FAR 52.204-7 in 2018, the FAR Council specifically considered whether to exempt joint ventures from being registered in SAM at the time they submitted offers to RFPs and rejected the notion.").  While these are all obviously tools of statutory (or in this case regulatory) construction, the resort to them undercuts the government's argument that FAR 52.204-7 is so

"clear and unambiguous" that any ambiguity between the solicitation and the FAR must be patent.

In short, both State and any reasonable contractor would have interpreted—and did in fact interpret—the solicitation at issue to permit an unincorporated joint venture to meet the SAM registration requirements by registering the members of the unincorporated joint venture in SAM. This interpretation held true until sometime after January 24, 2022, when Judge Hertling issued his decision.

What is more, although FAR 52.204-7 has an independent meaning—a meaning that was not challenged in this protest—if the words of FAR 52.204-7 were not independent and were simply another clause in Section L of the solicitation, they would be easily harmonizable with the Section L SAM registration requirements. Recall that FAR 52.204-7 provides that "[a]n Offeror is required to be registered in SAM when submitting an offer or quotation, and shall continue to be registered until time of award . . . ." 48 C.F.R. § 52.204-7(b)(1). For this solicitation, as established above, the plain language clearly provides, and the government does not seem to contest, that a joint venture partner is an "offeror." The solicitation also provides that unincorporated joint ventures do not need to register in SAM; thus, State must not have considered unincorporated joint ventures to be offerors when it wrote the solicitation. With these two principles in place, it is clear that for this solicitation at least, each joint venture partner in an unincorporated joint venture is an offeror; therefore, it was each joint venture partner in an unincorporated joint venture that needed to be registered in SAM. This interpretation of offeror would easily harmonize with the words of FAR 52.204-7 if it were simply another provision in the solicitation rather than an independent clause in the FAR, lending further support to the latency of the ambiguity.

Finally, even if the ambiguity between the SAM registration requirements in Section L of the solicitation and FAR 52.204-7 was a patent ambiguity, Plaintiffs were not required to raise this ambiguity with State prior to proposal submission. In general, "a party who has the opportunity to object to the terms of a government solicitation containing a *patent* error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Blue & Gold Fleet,* 492 F.3d at 1313 (emphasis added). However, the Federal Circuit has recognized an exception to this general rule in instances in which it would have been futile for a protestor to seek clarification from an agency. *Boeing Co. v. United States*, 968 F.3d 1371, 1377 (Fed. Cir. 2020) ("Although Boeing advances several rationales for the inapplicability of waiver, we need not go beyond the following [to determine the *Blue & Gold* waiver rule does not apply]. A pre-award objection by Boeing to the Defense Department would have been futile . . . ."). Here, seeking clarification from State regarding the SAM registration requirements would have been futile; therefore, the *Blue & Gold* waiver rule would not apply even if the SAM requirements were patently ambiguous.

The administrative record in this case is clear: if Plaintiffs had sought clarification of, or lodged a formal objection to, the SAM registration requirements before Judge Hertling's January 24, 2022, decision, State would have found Plaintiffs eligible to compete. First, State determined, prior to January 24th, that Plaintiffs were eligible for award and were the lowest

priced, technically acceptable offeror and thus the presumptive awardee.  Second, and more importantly, at the same time State was evaluating the instant procurement, State was presented with this exact question in the protest before Judge Hertling.  State's response in that protest was that joint ventures were not required to register in SAM.  Therefore, the government's argument that Plaintiffs "could have raised the SAM registration issue with [State] prior to proposal submission and gotten a meaningful response" simply is not accurate.  Gov.'s Reply at 12.  We know from the position the government took in the protest before Judge Hertling exactly what State's response would have been: "'[t]here is no requirement that the DUNS number associated with the joint venture be registered in SAM.'"  *G4S Secure Integration, LLC*, 2022 WL 211023, at *6 (citing the United States Cross-Motion for Judgment on the Administrative Record at 17).  Accordingly, it would have been futile for Plaintiffs to have attempted to clarify the SAM registration requirements with State.  State would have simply confirmed, just as it had already determined in this procurement and just as it was simultaneously arguing in the protest before Judge Hertling, that Plaintiffs satisfied the solicitation's SAM registration requirements.  Furthermore, it does not appear that Plaintiffs would even have had standing prior to State's February 8, 2022, reversal of its interpretation of the SAM requirements to challenge Section L as patently ambiguous, because, as the presumptive awardee, Plaintiffs were not harmed by the SAM registration requirements until State reinterpreted them.  *See, e.g.*, *Sys. Application & Tech. v. United States*, 100 Fed. Cl. 687, 707 (2011) ("[To establish standing in] the preaward context, a protester must show a non-trivial competitive injury which can be addressed by judicial relief.").

In addition, if one analyzes the Federal Circuit's application of *Blue & Gold Fleet*, as Judge Solomson did in *VS2, LLC v. United States*, it becomes clear that in determining if a protestor needed to challenge an issue at the agency prior to coming to this Court, a crucial question is whether the issue had yet arisen.  *See* 155 Fed. Cl. 738, 754–55 (2021).  In *COMINT Sys. Corp. v. United States*, the circuit held that "where bringing the challenge prior to the award is not practicable, it may be brought thereafter.  But, assuming that there is adequate time in which to do so, a disappointed bidder must bring a challenge to a solicitation containing a patent error or ambiguity prior to the award of the contract."  700 F.3d 1377, 1382 (Fed. Cir. 2007).  Thus, Judge Solomson observed that *COMINT Sys. Corp.* should be read as "*expanding* the time in which a solicitation challenge may be filed in this Court where the grounds for the protest did not exist prior to the proposal due date."  *VS2, LLC*, 155 Fed. Cl. at 754 (citing *COMINT Sys. Corp.*, 700 F.3d 1377).  This, according to Judge Solomson, is "a common sense proposition given that a plaintiff could not, without the advantage of a time machine or crystal ball, have known about the basis for its action."  *Id*. at 754–55.  Here, it is clear that the issue that Plaintiffs are challenging did not arise prior to the proposal due date.  In fact, the issue did not arise until February 8, 2022, when, according to State, in light of Judge Hertling's decision, it reinterpreted the SAM registration requirements.  AR 3252 ("[I]n light of a recent U.S. Court of Federal Claims decision, neither G4S nor ███ were properly registered as Joint Ventures in the Government's SAM.gov system at the time of proposal submission.").  Plaintiffs were made aware of this reinterpretation on February 15, 2022, AR 3255; immediately wrote to the agency to see if the agency would allow them to revise their proposal in light of the new interpretation, AR 3256; and filed a pre-award bid protest in this Court on March 7, 2022.  In other words, Plaintiffs raised this issue with State once it became known, AR 3256, and quickly thereafter filed a pre-award bid protest in this Court.

### 4.   Pursuant to FAR 15.206, State Was Required to Amend the Solicitation When It Changed Its Requirements or Terms and Conditions

The remaining question is: what was State required to do when it changed its interpretation of what is required with regard to SAM registration for unincorporated joint ventures?  Was State permitted, as it did, to simply issue a new competitive range determination that eliminated Plaintiffs from the competitive range because their unincorporated joint venture was not registered in SAM prior to proposal submission?  Or, because State's new interpretation was inconsistent with the solicitation's requirements or terms and conditions regarding SAM registration, was State required to amend the solicitation?

"It is hornbook law that agencies must evaluate proposals and make awards *based on the criteria stated in the solicitation*."  *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 386 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004) (emphasis added).  "It thus is beyond peradventure that the government may not rely upon undisclosed evaluation criteria in evaluating proposals, and, where appropriate, must disclose the factors' relative importance."  *Id.* (internal citations omitted); *see also Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367–68 (Fed. Cir. 1999) ("[R]egardless of the panel's view of the appropriateness of the standard [set out in the RFP], the Navy is strictly bound by its terms, and in waiving a portion of the standard . . . , the Navy violated a clearly applicable procurement statute and regulation.") (internal quotation marks and citations omitted).  Accordingly, when challenging an agency's adherence to the terms of a solicitation, "a protester must show that: (i) the procuring agency used a significantly different basis in evaluating the proposals than was disclosed; and (ii) the protester was prejudiced as a result—that it had a substantial chance to receive the contract award but for that error."  *Banknote Corp. of Am.*, 56 Fed. Cl. at 387 (footnote omitted).

With relative ease, the Court concludes that State ultimately "used a significantly different basis in evaluating [Plaintiffs'] proposals than was disclosed."  *Id.*  Rarely is an administrative bait-and-switch so self-evident: the plain text of Section L of the solicitation expressly permitted joint venture *partners'* registration in SAM to meet the SAM registration requirements; Plaintiffs satisfied that requirement according to State itself; and yet, State subsequently removed Plaintiffs from the competitive range for failing to comply with the SAM registration requirement based on State's new interpretation of that requirement.  Whether viewed as a new interpretation of the same solicitation requirement or an entirely new requirement writ large, State's chosen course of action had the effect of imposing a new requirement or term and condition on Plaintiffs long after they had submitted a proposal that, according to State itself, was "in accordance with the requirements" of the solicitation. AR 3243.

The Court only briefly notes the government's factually unsupportable arguments to the contrary.  For example, in its cross-motion and opposition brief, the government takes the position that "the Solicitation specifically contemplated disqualification for SAM registration failure."  Gov.'s MJAR at 13.  The government cites as support AR 79, which provides that failure to register in SAM will result in an offeror being "excluded from the process and their proposals will not be evaluated," as well as AR 91, which provides that the government "reserves the right to reject an offer if . . . [the] Offeror fails to submit any of the required

proposal documents required by Section L . . . ." Relying on these citations, the United States concludes that, "[t]herefore, [State] was within its rights to summarily reject G4S's proposal . . . ." *Id.* at 14. The government's contentions, however, run directly counter to the record evidence, including the agency's own conclusion in its Final Competitive Range Determination, wherein State concludes that Plaintiffs "provided all information *in accordance with the instructions stated in the solicitation*." AR 3242 (emphasis added); *see also* AR 3229 (as to "Proposal Requirement" section L.11.1.5, report reflects that Plaintiffs' "SAM documentation provided"). Moreover, because the solicitation clearly instructed that "[a]ny offeror whose registration is not active in SAM at the time of proposal submisssion [sic] will be excluded from the process and their proposals will not be evaluated," AR 391, it must have been the case that State considered Plaintiffs' registration active in SAM since Plaintiffs were not excluded from the process (until after Judge Hertling's decision) and their proposal was evaluated. *See, e.g.*, AR 3224 (Final TEP Report); AR Tab 28 (Final Price Analysis Report); AR 3270 (Award Determination Memorandum); AR 3242 (Final Competitive Range Determination) (collectively clearly demonstrating that State "evaluated" Plaintiffs' proposal).

For good measure, the Court notes that *even if* the express terms and requirements of the solicitation have *always* required SAM registration for an unincorporated joint venture itself, and not just its constituent members—as the government strongly, though wrongly, contends—the record before the Court makes abundantly clear that such is not how State itself *applied* the requirements in this procurement. To review, State's Final Competitive Range Determination provides:

> [t]he TEP identified an award to be made to G4S or ██████ as both were deemed technically "Acceptable". However, *in light of a recent U.S. Court of Federal Claims decision, neither G4S nor* ████ *were properly registered as Joint Ventures in the Government's SAM.gov system* at the time of proposal submission. Therefore, as required by FAR 52.204-7 and Section L of the solicitation, both ██ ██ and G4S cannot be considered for award and are determined to be ineligible to continue in the competitive range.

AR 3252 (emphasis added). Plaintiffs, thus, "were . . . 'Acceptable'" *until* "a recent U.S. Court of Federal Claims decision." *Id.* Try as it may, the government fails to convince the Court that State's requirements remained unchanged. *See WaveLink, Inc. v. United States*, 154 Fed. Cl. 245, 274 (2021) ("The Court rejects the government's attempt to avoid the Solicitation's plain language by asserting that the Agency merely decided to read it differently.").

The government's briefing in this case also spills much ink on whether Plaintiffs complied with FAR 52.204-7, as interpreted by Judge Hertling. As discussed above, Plaintiffs are not challenging in this bid protest that interpretation of FAR 52.204-7. Rather, the question before the Court in the instant matter is whether State faithfully applied the requirements or terms and conditions of the instant solicitation. The Court has determined it did not.

The question then becomes, having found that State imposed a new requirement or term and condition midstream, what was State compelled to do? The FAR provides a simple answer: "[w]hen, either before or after receipt of proposals, the Government changes its requirements or

terms and conditions, the contracting officer shall amend the solicitation." 48 C.F.R. § 15.206(a); *see also ARxIUM, Inc. v. United States*, 136 Fed. Cl. 188, 192 (2018) ("[I]t was arbitrary for the government not to amend the solicitation and accept revised quotations after its interpretation of the two requirements in question had changed."). The Court notes that the text of this provision is clear on its face and does not distinguish between instances in which (1) an agency awards a contract to an offeror whose proposal did not otherwise meet the express requirements of the solicitation (*i.e.*, the agency relaxes a requirement), or (2) an agency eliminates from competition an offeror whose proposal otherwise satisfies the express requirements of the solicitation (*i.e.*, the agency increases a requirement). *See, e.g.*, *Alfa Laval Separation, Inc.*, 175 F.3d at 1368 (citing 48 C.F.R. § 15.606(a), (c), the predecessor to 48 C.F.R. § 15.206) ("48 C.F.R. § 15.606(a), (c) (1996) (requiring the government to issue a written amendment to a solicitation when it 'changes, relaxes, increases, or otherwise modifies its requirements,' and to provide an opportunity for competitors to submit new or amended proposals when it prefers a proposal involving 'a departure from the stated requirements')"); *see also Seventh Dimension, LLC v. United States*, No. 21-2275C, 2022 WL 1486504, at *10 (Fed. Cl. May 4, 2022) ("To summarize, the CO must issue a solicitation amendment to capture *any* government changes to requirements or terms and conditions." (emphasis added)). Said another way, "[i]f the agency changes any evaluation criterion after issuing the solicitation, it must amend the solicitation and notify the offerors of the changed requirement." *Elec. Data Sys., LLC v. United States*, 93 Fed. Cl. 416, 430 (2010) (citing 48 C.F.R. § 15.206(a)).[4] State issued no such amendment in this procurement, despite what in effect was its change to the SAM registration requirements following receipt of proposals. Thus, the Court will apply FAR 15.206 to require State to properly amend, notify offerors, and issue a revised solicitation.

The Court takes no position at this juncture on whether such an amendment would trigger the requirements of FAR 15.206(e), which provides:

> If, in the judgment of the contracting officer, based on market research or otherwise, an amendment proposed for issuance after offers have been received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would have submitted offers had the

---

[4] Another judge of this Court has previously seemingly suggested that mere technicalities in a solicitation, such as extending deadlines, cannot be grounds for an agency's violation of FAR 15.206(a). In *Guardian Moving & Storage Co. v. United States*, Judge Kaplan opined—

> [Plaintiff's] premise that an agency must amend the solicitation when extending an FPR deadline has no support in the language of the FAR or any case of which the Court is aware. Under FAR 15.206(a), an amendment to the solicitation is required only "[w]hen, either before or after receipt of proposals, the Government changes its requirements or terms and conditions." While [Plaintiff] views an extension of the FPR deadline as a change in the "requirements or terms and conditions," . . . case law and other authority suggest that FAR 15.206 refers to substantive changes in evaluation criteria that would cause offerors to alter their proposals. *See SP Sys., Inc. v. United States*, 86 Fed. Cl. 1, 18 (2009) . . . .

*Guardian Moving & Storage Co. v. United States*, 122 Fed. Cl. 117, 134 (2015), *aff'd*, 657 F. App'x 1018 (Fed. Cir. 2016) (internal and other citations omitted). However, the Court in the instant matter finds the solicitation's SAM registration requirements as substantive and not a mere technicality.

substance of the amendment been known to them, the contracting officer shall cancel the original solicitation and issue a new one, regardless of the stage of the acquisition.

48 C.F.R. § 15.206(e).  This provision of the FAR gives the contracting officer some discretion in deciding whether to cancel the original solicitation and that discretion should be exercised before the Court opines on its propriety.

Finally, the Court ponders whether State viewed itself as stuck between a rock and a hard place: proceed with award to Plaintiffs in the wake of Judge Hertling's decision and face a bid protest for action allegedly contrary to law; or, exclude Plaintiffs based on State's last minute, newly adopted interpretation of FAR 52.204-7 and risk the very bid protest the agency finds itself in today.  The Court would sympathize with an agency in such a position, but for the fact that State failed to take the one route prescribed by the FAR that could have avoided this situation in the first place: formally amend the solicitation to account for State's modified SAM registration requirements.  This State was compelled to do under FAR 15.206, and this State failed to do.  Plaintiffs have thus identified "a clear and prejudicial violation of applicable . . . regulations."  *Impresa Construzioni*, 238 F.3d at 1333.

### 5.  State's Decision to Eliminate Plaintiffs from the Competitive Range Failed to Consider an Important Aspect of the Problem

Alternatively, and independently of the above, State's decision to solve the problem created by its new interpretation of the SAM registration requirements was arbitrary and capricious, because, in addressing the issue, "the agency 'entirely failed to consider an important aspect of the problem.'"  *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also CBY Design Builders v. United States*, 105 Fed. Cl. 303, 344 (2012) ("[T]he Court finds that this is one of the rare cases in which the agency entirely failed to consider an important aspect of the problem." (internal quotations and citations omitted)).  Although it is "rare for our court to find that an agency's decision was arbitrary because the agency entirely failed to consider an important aspect of the problem," the administrative record demonstrates that this protest is such a case.  *ARxIUM, Inc.*, 136 Fed. Cl. at 200 (internal quotations and citations omitted).  Indeed, the very limited support in the administrative record for the action that State did take once it changed its interpretation of the SAM requirements does not show whether State considered *any* other way of solving the problem.

To review, all that is included in the administrative record showing what State considered after its new interpretation of the SAM requirements caused its only two technically acceptable proposals to be ineligible for award is the following:

However, in light of a recent U.S. Court of Federal Claims decision, neither G4S nor ███ were properly registered as Joint Ventures in the Government's SAM.gov system at the time of proposal submission.  Therefore, as required by FAR 52.204-7 and Section L of the solicitation, both ███ and G4S cannot be

considered for award and are determined to be ineligible to continue in the competitive range.

Both ▮ and ▮▮▮ were properly registered within SAM at time of proposal submission with ▮▮▮ presenting an Active SAM account for it's [sic] JV and ▮ presenting an Active SAM account as the lone offeror in it's [sic] proposal with no JV partner noted. Therefore, while neither is deemed technically "Acceptable" at this time, it is determined that we can enter into a final round of discussions so each vendor can present a chance to fix their deficiencies.

AR 3252. If there is anything else in the administrative record that demonstrates that State considered any other way of solving the problem, the government failed to direct the Court to that material, as was its burden if such material exists. In sum then, State's documented consideration of how to solve the problem consisted of determining that, "in light of" Judge Hertling's decision, Plaintiffs "cannot be considered for award" and are "ineligible to continue in the competitive range." AR 3252. And State's solution was to allow two proposals that were found to be technically *unacceptable* back into the competitive range. *Id*. Yet, there is no analysis in the administrative record to support these decisions, nor is there any evidence whatsoever that State considered other ways to address the fact that its new interpretation of the SAM requirements had just eliminated its only two technically *acceptable* proposals from the competitive range. As Plaintiffs point out:

there is zero evidence that DoS considered important aspects of the problem, such as whether the decision should be applied differently in ongoing vs. future procurements; whether DoS must or should amend the Solicitation to allow G4S and the other technically acceptable offeror to revise their proposals; and whether DoS must or should conduct another round of discussions that included G4S and the other technically acceptable offeror.

Pls.' MJAR at 27.

Moreover, this failure to consider other important aspects of the problem is particularly arbitrary considering that State decided to allow back in two proposals that, even after discussions, were found to be technically unacceptable by the TEP. AR 3252 (deciding, without explanation, that technical proposals submitted by ▮▮▮ and ▮ "were not so different to warrant a complete rejection of any offer based on technical requirements"). In other words, State's decision was not one that, for example, eliminated the two highest-rated proposals and moved on to lower-rated but technically acceptable proposals; instead, State allowed two technically unacceptable proposals back into the competition to see if they could be fixed through additional discussions.

In addition, while the Court does not believe that the SAM registration requirement can be corrected through discussions (as will be discussed in subsection 7 *infra*), that does not appear to be State's position. Rather, in the protest before Judge Hertling, the government argued that State could remedy failure to comply with FAR 52.204-7 by conducting discussions and accepting revised proposals. Opp'n Pls.' Mot. Inj. Pending Appeal at 6, *G4S Secure Integration*

*LLC, et al., v. United States*, No. 21-1817 (Fed. Cl. Mar. 17, 2022) ("DoS could have reopened the procurement to conduct discussions and permit revised offers to remedy the SAM registration issue."); *see also id.* at 2–3 (stating that the SAM registration issue is a deficiency remediable via discussions); Hr'g Tr. at 68, *G4S Secure Integration LLC, et al., v. United States*, No. 21-1817 (Fed. Cl. Mar. 30, 2022), ECF No. 70 (acknowledging that reopening discussions to permit G4S to address its SAM registration "would be . . . within [DoS]'s discretion"). In other words, State believed it could reopen discussions to solve the SAM registration issue with Plaintiffs who had the lowest price, technically acceptable offer, but instead, without explanation, decided to reopen discussions to allow two technically unacceptable proposals to compete. Although it is possible State had an explanation for such an apparently unreasonable decision, it is not documented in the record. Accordingly, State's approach fails to address important aspects of the problem and is thus unreasonable and Plaintiffs were clearly prejudiced by this failure.

### 6.  Plaintiffs Were Prejudiced by State's Failure to Amend the Solicitation

Although State erred by failing to amend the solicitation to account for its newly adopted SAM registration requirements and by removing Plaintiffs from the competitive range without considering an important aspect of the problem, this alone does not entitle Plaintiffs to relief. Rather, Plaintiffs must demonstrate that State's errors were prejudicial. *Bannum, Inc.*, 404 F.3d at 1351 ("A bid protest proceeds in two steps. . . . [I]f the trial court finds that the government's conduct fails the APA review . . . , then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct."); *see also Ascendant Servs., LLC v. United States*, No. 22-72 C, 2022 WL 2063327, at *8 (Fed. Cl. May 16, 2022) ("There is no presumption of prejudicial error, even in cases where the agency's action was irrational.") (citing *Sys. Studies & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021)). Prejudice, thus, is a question of fact. Generally, the Court is to consider whether "there was a substantial chance that [Plaintiffs] would have received the contract award but for [the agency's] error." *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996). In the pre-award protest context, however, the prejudice inquiry asks "whether [Plaintiffs have] demonstrated a non-trivial competitive injury which can be addressed by judicial relief." *Weeks Marine, Inc.*, 575 F.3d at 1362 (internal quotations omitted).

Plaintiffs contend that "[b]ecause DoS confirmed [Plaintiffs'] understanding of the Solicitation's SAM registration requirements before and after proposal submission, . . . the FAR dictate[s] that the contracting officer did not have the discretion to eliminate [Plaintiffs] from the competition without permitting [Plaintiffs] the opportunity to propose against DoS's new interpretation," and, therefore, Plaintiffs were prejudiced. Pls.' Response & Reply at 26 (emphasis omitted). Similarly, in its arguments as to standing, Plaintiffs contend that they were "the lowest-priced, technically acceptable offeror and [were] apparently recommended for contract award before DoS arbitrarily excluded [Plaintiffs] from the competition. Thus, but for DoS's arbitrary action, [Plaintiffs] would have won the contract." Pls.' MJAR at 18. Under either allegation of prejudicial harm—and under either standard for prejudice—the Court firmly concurs with Plaintiffs.

26

The record is clear that, but for the agency's erroneous application of the requirements of its own solicitation—and attendant failure to amend the solicitation pursuant to FAR 15.206—the agency's TEP had "identified an award to be made to [Plaintiffs or ████ as both were deemed technically 'Acceptable.'" AR 3252. In fact, Plaintiffs were not merely among the final contenders for award but were *the presumptive awardees. See* AR 3270 ("Based on this assessment, G4S was selected for contract award."). Therefore, Plaintiffs have demonstrated more than sufficient prejudice, meeting *both* the "substantial chance" standard, as well as the pre-award-specific inquiry of "non-trivial competitive injury." Whether viewed as a failure to amend the solicitation pursuant to FAR 15.206 or a failure to consider an important aspect of the problem, State was required to do more than make a conclusory determination that Plaintiffs needed to be removed from the competitive range. Rather, State needed to amend the solicitation to conform to its new interpretation of the SAM registration requirements and to consider fully the problem it faced when it determined that its only two technically acceptable proposals did not comply with this new interpretation. These failures prejudiced Plaintiffs.

### 7. State Engaged in Misleading Discussions in Violation of the FAR, But Under the Express Terms of the Solicitation, Plaintiffs Were Not Prejudiced

The Court turns to Plaintiffs' allegations regarding the discussions State held, which Plaintiffs allege were misleading. *See* Pls.' MJAR at 29–33. Specifically, Plaintiffs contend that State failed to indicate to, or discuss with, Plaintiffs its new interpretation of FAR 52.204-7 and the solicitation's SAM registration requirements. According to Plaintiffs, State "conducted discussions with G4S in December 2021 but did not raise any questions or concerns regarding G4S's SAM registration status or compliance with FAR 52.204-7," and "[b]y failing to raise those issues, DoS signaled that it was permissible for an unincorporated joint venture to submit a proposal without registering in SAM.gov as long as the individual members were registered in SAM.gov . . . ." *Id.* at 30. Furthermore,

> [i]f [State] had instead believed that FAR 52.204-7 required even unincorporated joint ventures to be registered in SAM.gov at the time of proposal submission, its discussions with G4S would have had to address the issue, as the purpose of discussions is to address "deficiencies [and] significant weaknesses" with each offeror in the competitive range to "maximize the Government's ability to obtain best value."

*Id.* at 31 (quoting FAR 15.306(d)(2)–(3)). Plaintiffs allege they were prejudiced "because, but for [State's] failure to reopen discussions with G4S *to allow it the opportunity to revise its proposal* according to the Agency's new interpretation, G4S would have registered its unincorporated joint venture in SAM.gov and won the contract." *Id.* (citation omitted) (emphasis added).

The government counters that "G4S's argument fails because [State] was not required to discuss G4S's registration failure and no discussion would have resulted in any action that would rectify G4S's failure to be registered in SAM at the time of proposal submission." Gov.'s MJAR at 15. According to the government, "[c]ontrary to G4S's contention, FAR 15.306(d)(3) does not require the agency to discuss G4S's failure to register the joint venture in SAM," because

"FAR 15.306(d)(3)'s statement that a contracting officer should discuss weaknesses is qualified by a statement that, '[t]he scope and extent of discussions are a matter of contracting officer judgment.'"  *Id.*  Furthermore, State "did not have any discretion to waive the requirement that registration of the Joint Venture occur on or before October 4, 2021," and "[d]iscussion of this with G4S would have been fruitless given the lack of flexibility [State] had."  *Id.* at 16 (footnote omitted).

The Court briefly reiterates the muddled facts of this case—which are entirely of the government's own making.  The solicitation requires an active SAM registration "at the time of proposal submission," otherwise such offeror(s) "will be excluded from the process and their proposals *will not be evaluated*," AR 391 (emphasis added); following receipt of Plaintiffs' proposals, State proceeded to evaluate such proposals, *see, e.g.*, AR 3224 (Final TEP Report); AR Tab 28 (Final Price Analysis Report); AR 3270 (Award Determination Memorandum); AR 3242 (Final Competitive Range Determination); State held discussions with Plaintiffs in December 2021; then, after having such discussions, State "appreciated the import of the Solicitation's clauses" and "disqualified" Plaintiffs from the competition.  Gov.'s Reply at 19.  Tabling for a moment the issue of prejudice, and if the Court assumes arguendo an additional fact, the Court must conclude that State erred by failing to raise the SAM registration issue with Plaintiffs during discussions—an omission that violates both the letter and spirit of the FAR.  As further explained below, if the Court accepts the government's strongly held premise that SAM registration failure was a defect warranting elimination from consideration, then it necessarily operates as a "deficiency" under the FAR, thus necessitating that the government at the very least notify Plaintiffs because it had previously held discussions.

First, the government glosses over the fact that, while the FAR indeed grants discretion to contracting officers concerning the discussion of mere weaknesses, *see* Gov.'s MJAR at 15, the FAR grants no such discretion concerning deficiencies.  Rather, FAR 15.306(d)(3) in relevant part provides—

> At a minimum, the contracting officer *must . . . indicate to, or discuss* with, each offeror still being considered for award, *deficiencies, significant weaknesses, and adverse past performance information* to which the offeror has not yet had an opportunity to respond.  The contracting officer also is encouraged to discuss other aspects of the offeror's proposal that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award.  However, the contracting officer is not required to discuss every area where the proposal could be improved.  The scope and extent of discussions are a matter of contracting officer judgment.

FAR 15.306(d)(3) (emphasis added).  The FAR defines "deficiency" as "a material failure of a proposal to meet a Government requirement . . . ."  48 C.F.R. § 15.001.  Thus, said another way, *if* Plaintiffs' proposals suffered "a material failure . . . to meet a Government requirement," *then* "[a]t a minimum, the contracting officer must . . . indicate to, or discuss with" Plaintiffs such a deficiency if Plaintiffs were "still being considered for award."

So, did Plaintiffs' proposals suffer from a deficiency?  Plaintiffs repeatedly refer to their SAM registration status, at least when viewed through the lens of the government's new interpretation of the solicitation's SAM registration requirement, as a deficiency.  *See, e.g.,* Pls.' MJAR at 32 ("G4S's failure to register the unincorporated joint venture in SAM was a deficiency that [State] should have identified and raised during discussions.").  Cleverly, the government never appears to admit as much.  Yet, its briefs seem to say everything but.  The government in its own cross-motion refers to Plaintiffs' "*failure* to comply with the solicitation and FAR's SAM registration requirements," which warranted disqualification. Gov.'s MJAR at 6 (emphasis added); *see also id.* at 10 (noting Plaintiffs' "failure to both register the Joint Venture itself and register it before the proposal submission deadline" and "the requirements . . . in the Solicitation requiring that the Joint Venture itself be registered in SAM.gov"); Gov.'s Reply at 18 (advocating for "a straightforward application of the Solicitation terms to G4S's failure to register in SAM").

At the same time, the government insists "[i]t was . . . not an abuse of discretion for the Contracting Officer to decide not to hold any discussions regarding a fatal defect . . . ."  Gov.'s Reply at 18.  Yet, despite this "fatal defect," State evaluated Plaintiffs' proposals and proceeded to hold discussions.  The government, it seems, wants to enjoy the effect of a deficiency on Plaintiffs without acknowledging the responsibility the FAR places in return on the contracting officer.  The Court cannot oblige.  And FAR 15.306(d)(3) gives no shelter to an agency that appears incapable, in this case, of maintaining a consistent interpretation of its own solicitation.

The Court thus assumes *arguendo* that *if* Plaintiffs' SAM registration was not compliant with the solicitation's requirements—a "fatal defect"—such noncompliance would constitute a deficiency.  State's failure to raise it during the discussions that State itself initiated violates the mandate and spirit of FAR 15.306(d)(3), robbing Plaintiffs of meaningful discussions.  And although the government insists the December 2021 discussions overall "were simply unnecessary," Gov.'s Reply at 18, that does not absolve State of its duty to follow what the FAR mandates.

Moreover, State's failure to "indicate to, or discuss with" Plaintiffs the apparent deficiency is equally offensive if the Court considers State's read of the SAM registration requirements as retroactively applied, after discussions had already taken place.  In other words, regardless of whether State initially viewed its solicitation as mandating a joint venture register in SAM as a single entity or adopted that view post-hoc in light of Judge Hertling's opinion, State's omission runs afoul of the FAR.  *See ARxIUM, Inc.*, 136 Fed. Cl. at 202 ("Retroactively applying the GAO interpretation of requirement # 23 to ARxIUM's proposal renders the discussions arbitrary and unfair to plaintiff, as it was not afforded the opportunity to address the failure of its proposal to meet the new interpretation.").

Nevertheless, even in holding that State erred by misleading Plaintiffs during discussions by failing to raise either Plaintiffs' "fatal defect" or State's new interpretation of the SAM registration requirements, the Court finds that such objectionable error(s) would not be prejudicial to Plaintiffs.  Under the terms of this solicitation, SAM registration compliance was relevant at the time of proposal submission, and there is no compelling authority before the Court suggesting that, under a plain reading of this solicitation, discussions alone would be sufficient to

give Plaintiffs the opportunity to correct the SAM registration deficiency.  Recall, subsection L.11.1 of the solicitation provides—

> Offer[or]s, including any offeror organized as a joint venture, must have an active SAM registration *at the time of proposal submission* and throughout the procurement process. Any offeror whose registration is not active in SAM *at the time of proposal submisssion* [sic] will be excluded from the process and their proposals will not be evaluated.

AR 79 (bold omitted, emphasis added).  The government is therefore correct that under the terms of this solicitation, "there is nothing G4S could have done during discussions in December 2021 that would have rectified its failure to be registered in SAM at the time of its proposal submission in October 2021."  Gov.'s Reply at 18; *see also* Gov.'s MJAR at 16 ("[State] did not have any discretion to waive the requirement that registration of the Joint Venture occur on or before October 4, 2021, [and] [d]iscussion of this with G4S would have been fruitless given the lack of flexibility [State] had.").

In sum, State undertook discussions with Plaintiffs, which proved misleading and contrary to the mandate of FAR 15.306(d)(3) *if* the Court assumes arguendo that Plaintiffs' alleged SAM registration failure constitutes a deficiency.  The agency cannot hide behind its belated new interpretation—or its belated realization of the meaning of its own solicitation—to negate its duty under the FAR to engage in meaningful discussions with Plaintiffs.  However, because the instant solicitation yielded no room for correction of that deficiency through discussions alone, Plaintiffs were not prejudicially harmed by State's error.

### 8.  Plaintiffs Are Entitled to Injunctive Relief

As Plaintiffs have established that State's failure either to follow the terms of the solicitation or, if it wanted to change its requirements or terms and conditions, amend the solicitation, was both contrary to law and prejudicial, as was its failure to consider an important aspect of the problem, the Court addresses whether Plaintiffs are entitled to injunctive relief.  The Federal Circuit has articulated the test for a permanent injunction as follows:

> To determine if a permanent injunction is warranted, the court must consider whether (1) the plaintiff has succeeded on the merits of the case; (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) the public interest is served by a grant of injunctive relief.

*Centech Group, Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004)).  "'[P]roving success on the merits is a necessary element for a permanent injunction, [but the court] may balance the remaining three *Centech* permanent injunction factors—irreparable harm, balance of hardships, and public interest—when deciding whether to grant or deny injunctive relief . . . ."  *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 999 & n.13 (Fed. Cir. 2018).

Here, Plaintiffs have succeeded on the merits—a "necessary element" of the injunctive relief inquiry.  State committed prejudicial error by failing to amend the solicitation pursuant to FAR 15.206(a) when it modified the solicitation's SAM registration requirements and by failing to consider an important aspect of the problem.  Therefore, the Court addresses the remaining three injunctive relief factors and will balance them, if necessary.

First, the Court finds that Plaintiffs will suffer irreparable harm if the court withholds injunctive relief.  With respect to irreparable harm, the pertinent question is "whether plaintiff has an adequate remedy in the absence of an injunction."  *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993); *see also Younger v. Harris*, 401 U.S. 37, 43–44 (1971) ("[T]he basic doctrine of equity jurisprudence [is] that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.").  Plaintiffs argue that "[a]bsent injunctive relief, [Plaintiffs] will suffer at least three types of irreparable harm: loss of the opportunity to fairly compete for the contract; loss of profits from the contract; and the loss of key personnel currently working on the incumbent contract."  Pls.' MJAR at 34.

"This court has recognized that a lost opportunity to compete for a contract—and the attendant inability to obtain the profits expected from the contract—can constitute irreparable injury."  *Bluewater Mgmt. Grp., LLC v. United States*, 150 Fed. Cl. 588, 619 (2020) (citing *Akal Sec., Inc. v. United States*, 87 Fed. Cl. 311, 319 (2009); *Hosp. Klean of Tex., Inc. v. United States*, 65 Fed. Cl. 618, 624 (2005)); *see also CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 494 (2013) ("The Court of Federal Claims has repeatedly held that a protester suffers irreparable harm if it is deprived of the opportunity to compete fairly for a contract."); *Serco Inc. v. United States*, 81 Fed. Cl. 463, 501–02 (2008) (noting that because "the only other available relief—the potential for recovery of bid preparation costs—would not compensate [the protestors] for the loss of valuable business . . . loss, deriving from a lost opportunity to compete on a level playing field for a contract, has been found sufficient to prove irreparable harm").  As has been well-established above, State's prejudicial error resulted in Plaintiffs being entirely removed from competition without recourse, which necessarily carries with it the associated loss of profits and key personnel currently working on the incumbent contract.  Accordingly, Plaintiffs will suffer irreparable harm if injunctive relief is not provided.

Next, the Court finds that the balance of hardships to the respective parties favors the grant of injunctive relief.  On this factor, the Court must determine whether the balance of hardships to the government in issuing an injunction outweigh the harms to Plaintiffs.  *PGBA, LLC*, 389 F.3d at 1229.  Here Plaintiffs have established irreparable harm, as explained above.  The government argues that "[g]ranting an injunction would prolong an already extended procurement process, require [State] to administer short-term holdover contracts, and disrupt the smooth transition between the incumbent contractor and prospective awardee," which would all "cause substantial disruption to [State's] diplomatic mission in Slovakia."  Gov.'s MJAR at 23.  However, the harms asserted by the government do not outweigh the harm to Plaintiffs.  State's failure to apply the terms of its own solicitation or to amend the solicitation pursuant to FAR 15.206 was detrimental to Plaintiffs' ability to meaningfully compete for the contract.  The government cannot now contend that costs and delays stemming from State's own failures either to follow the requirements of the solicitation or amend it as the FAR requires should prevent the

31

issuance of an injunction. *See CW Gov't Travel, Inc. v. United States*, 154 Fed. Cl. 721, 751 (2021). As Judge Hertling recently observed:

> Requiring the government to continue purchasing the services from the incumbent for the interim does not outweigh the irreparable harm to an offeror arising from an agency's own failure to comply with the law in awarding the contract. Further, the resources needed to conduct a proper procurement are only those that should have been employed originally by the Agency. Having to employ these resources again is not a hardship, but an obligation.

*Green Tech. Grp., LLC v. United States*, 147 Fed. Cl. 231, 246 (2020) (citation omitted); *see also Caddell Constr. Co. v. United States*, 111 Fed. Cl. 49, 116–17 (2013) ("[A]ny harm caused to the [agency] by granting a permanent injunction regarding [awardee's] performance of the [] contract is the result of defendant's conduct during the procurement."); *Sheridan Corp. v. United States*, 94 Fed. Cl. 663, 670 (2010) ("From the Court's view, these alleged harms are of the agency's own making.").

Finally, the Court finds that the public interest is served by a grant of injunctive relief. The Supreme Court has instructed that before a court "employ[s] the extraordinary remedy of injunction," it "should pay particular regard for the public consequences" of so doing. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). It is beyond dispute that "[t]here is an overriding public interest in preserving the integrity of the procurement process by requiring the government to follow its procurement regulations." *Turner Constr. Co. v. United States*, 94 Fed. Cl. 561, 586 (2010) (citation and internal quotations omitted), *aff'd*, 645 F.3d 1377 (Fed. Cir. 2011). Moreover, "the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid." *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003). It is paramount that State—as with any agency—abide by the terms of its solicitation and the FAR in order to maintain public confidence in the procurement process. The Court finds this factor most compelling in the instant case, in which State's midstream, about-face modification of its own requirements rendered Plaintiffs the presumptive awardees one day and completely out of the competition the next. *See* AR 3252 ("The TEP identified an award to be made to [Plaintiffs] . . . . However, . . . . [Plaintiffs] cannot be considered for award and are determined to be ineligible to continue in the competitive range."). Accordingly, this factor strongly weighs in Plaintiffs' favor.

Accordingly, because all factors weigh in Plaintiffs' favor, no balancing is necessary. Plaintiffs are entitled to injunctive relief in the instant matter.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiffs' motion for judgment on the administrative record, **DENIES** the government's cross-motion for judgment on the administrative record, and orders as follows:

1. The United States, by and through the Department of State, its officers, agents, and employees, is hereby **PERMANENTLY RESTRAINED AND ENJOINED** from continuing procurement of Solicitation No. 19AQMM21R0194 at issue in this protest, until such time as it amends Solicitation No. 19AQMM21R0194 pursuant to the FAR in a manner that is consistent with this Opinion and Order.

2. The parties shall confer to determine agreed-to proposed redactions to this opinion.  On or before **August 11, 2022**, the parties shall file a joint status report indicating their agreement on proposed redactions, attaching a copy of those pages of the Court's opinion that contain proposed redactions, with all proposed redactions clearly indicated; and

3. The Clerk shall **ENTER** final judgment accordingly.

**IT IS SO ORDERED.**

<u>s/ Zachary N. Somers</u>
ZACHARY N. SOMERS
Judge